5/28/24, 12:54 AM  Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA    Document 1-1    Filed 06/06/24    Page 1 of 8

LEGAL STATUS

This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

LEGAL STATUS

# Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barracks Bombing Victims and 1996 Khobar Towers Bombing Victims; Request for Comment

A Notice by the Government Accountability Office on 12/28/2023

DOCUMENT DETAILS

**Printed version:**
PDF (https://www.govinfo.gov/content/pkg/FR-2023-12-28/pdf/2023-28674.pdf)

**Publication Date:**
12/28/2023 (/documents/2023/12/28)

**Agency:**
Government Accountability Office (https://www.federalregister.gov/agencies/government-accountability-office)

**Dates:**
Interested persons are invited to submit comments on or before January 28, 2024.

**Comments Close:**
01/28/2024

**Document Type:**
Notice

**Document Citation:**
88 FR 89693

**Page:**
89693-89696 (4 pages)

**Document Number:**
2023-28674

DOCUMENT DETAILS

5/28/24, 12:54 AM — Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA   Document 1-1   Filed 06/06/24   Page 2 of 8

DOCUMENT STATISTICS

Page views:
1,242
as of 05/27/2024 at 4:15 pm EDT

DOCUMENT STATISTICS

PUBLISHED DOCUMENT

## AGENCY:

Government Accountability Office (GAO).

## ACTION:

Notice of planned methodology for estimating lump sum catch-up payments; request for comment.

## SUMMARY:

GAO is now accepting comments on our notice of planned methodology for estimating potential lump sum catch-up payments to certain 1983 Beirut Barracks bombing victims and certain 1996 Khobar Towers bombing victims who have submitted eligible claims for payment to the United States Victims of State Sponsored Terrorism Fund. We invite comments on all aspects of the planned methodologies proposed in this notice. GAO is publishing this notice pursuant to of the requirements of the Fairness For 9/11 Families Act (Fairness Act). Comments should be sent to the email address below.

## DATES:

Interested persons are invited to submit comments on or before January 28, 2024.

## ADDRESSES:

Submit comments to *FundPaymentComments@gao.gov (mailto:FundPaymentComments@gao.gov)* or by U.S. mail to Ms. Triana McNeil at 441 G Street NW, Washington, DC 20548.

## FOR FURTHER INFORMATION CONTACT:

David Lutter, at (202) 512–7500 or *LutterD@gao.gov (mailto:LutterD@gao.gov)* if you need additional information. For general information, contact GAO's Office of Public Affairs, 202–512–4800.

## SUPPLEMENTARY INFORMATION:

Pursuant to sec. 101 of Fairness For 9/11 Families Act (Fairness Act), GAO is publishing this notice of estimated potential lump ☐ sum catch-up payments to certain 1983 Beirut Barracks bombing victims and certain 1996 Khobar Towers bombing victims who have submitted eligible claims to the United States Victims of State Sponsored Terrorism Fund (Fund), on or after December 29, 2022, and by June 27, 2023.[1]

☐ Start Printed Page 89694

For purposes of the Fund, the term "claim" generally refers to a claim based on compensatory damages awarded to a United States person in a final judgment.[2] These judgments are issued by a United States district court under state or federal law against a foreign state that has been designated a state sponsor of terrorism and arising from acts of international terrorism.[3] In general, a claim is determined eligible for payment from the Fund if the Special Master determines that the judgment holder (referred to as a "claimant") is a United States person, that the claim at issue meets the definition of claim above, and that the

5/28/24, 12:54 AM                Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA    Document 1-1    Filed 06/06/24    Page 3 of 8

claim was submitted timely.[4] All decisions made by the Special Master with regard to compensation from the Fund are final and not subject to administrative or judicial review.[5] As of January 2023, the Fund has allocated to all eligible claimants approximately $3.4 billion in four payment rounds, which were authorized in 2017, 2019, 2020, and 2023. The Fund was established in 2015 by the Justice for United States Victims of State Sponsored Terrorism Act (Victims Act).[6] At the time of enactment, the Victims Act allowed plaintiffs in two identified lawsuits, *In Re 650 Fifth Avenue and Related Properties* and *Peterson* v. *Islamic Republic of Iran* ( *Peterson* )[7] to elect to participate in the Fund and assign any and all rights, title, and interest in the actions for the purposes of participating in the Fund.[8] Plaintiffs in these actions who did not elect to participate in the Fund were also permitted to submit an application for conditional payment from the Fund in which initial payment amounts would be determined and set aside, pending a final determination in these actions.[9] In the event that a final judgment was entered in favor of the plaintiffs in the actions and funds were distributed, the payments allocated to claimants who applied for a conditional payment were to be considered void, and any funds previously allocated to such conditional payments be made available and distributed to all other eligible claimants.[10] A final judgment in favor of plaintiffs in *Peterson* was entered, appealed to the United States Court of Appeals for the Second Circuit, and ultimately affirmed by the United States Supreme Court on April 20, 2016.[11] Distributions to the judgment creditor plaintiffs in *Peterson* commenced on October 19, 2016.[12] Accordingly, conditional claimants who were judgment creditors in *Peterson* did not receive award payments, and the Fund did not include them in award calculations in 2017 for the first round of payments or subsequent payment rounds.[13] These conditional claimants include 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims.

The Victims Act outlines minimum payment requirements in which any applicant with an eligible claim who has received, or is entitled or scheduled to receive, any payment that is equal to, or in excess of, 30 percent of the total compensatory damages owed on the applicant's claim from any source other than the Fund [14] shall not receive any payment from the Fund until all other eligible applicants have received from the Fund an amount equal to 30 percent of the compensatory damages awarded to those applicants pursuant to their final judgments.[15] The Fairness Act amended the Victims Act to provide that the minimum payment requirements include the total amount received by applicants who are 1983 Beirut Barracks bombing victims or 1996 Khobar Towers bombing victims as a result of or in connection with *Peterson* or *In Re 650 Fifth Avenue and Related Properties*.[16] It further provides that any such applicant who has received or is entitled or scheduled to receive 30 percent or more of such applicant's compensatory damages judgment as a result of or in connection with such proceedings shall not receive any payment from the Fund, except as consistent with minimum payment requirements or as part of a lump sum catch-up payment under section 101 of the Fairness Act.[17]

Section 101 of the Fairness Act contains a provision for GAO to conduct an audit and publish a notice estimating potential lump sum catch-up payments for 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims who submitted eligible applications to the Fund on or after December 29, 2022, and by June 27, 2023.[18] This section also established a lump sum catch-up payment reserve fund within the Fund and appropriated  $3 billion to this reserve fund.[19] Specifically, we are publishing for comment our methodology for estimating lump sum catch-up payments for eligible 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims in "amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of such victims received from the Fund being equal to the percentage of the claims of non-9/11 victims of state sponsored terrorism received from the Fund, as of the date of enactment."[20] For the purposes of this analysis and consistent with the Fairness Act, "1983 Beirut Barracks bombing victim" means "a plaintiff, or estate or successor in interest thereof, who has an eligible claim to the Fund that arises out of the October 23, 1983, bombing of the United States

 Start Printed Page 89695

5/28/24, 12:54 AM　　Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA   Document 1-1   Filed 06/06/24   Page 4 of 8

Marine Corps Barracks in Beirut, Lebanon, and includes a plaintiff, estate, or successor in interest who is a judgment creditor in *Peterson* v. *Islamic Republic of Iran* or a settling judgment creditor as identified in the order dated May 27, 2014, in *In Re 650 Fifth Avenue & Related Properties.* "[21] The term "1996 Khobar Towers bombing victim" means "a plaintiff, or estate or successor in interest thereof, who has an eligible claim to the Fund that arises out of the June 25, 1996 bombing of the Khobar Tower housing complex in Saudi Arabia, and includes a plaintiff, estate, or successor in interest who is a judgment creditor in *Peterson* v. *Islamic Republic of Iran* or a settling judgment creditor as identified in the order dated May 27, 2014, in *In Re 650 Fifth Avenue & Related Properties.* "[22]

## Methodology To Produce Estimates for Lump Sum Catch-Up Payments

To estimate the amount(s) called for in section 101, GAO will utilize data from the Fund on the following amounts: (1) payments from the Fund received by non-9/11 claimants in the first through fourth payment rounds; [23] (2) net eligible claims [24] of these non-9/11 claimants in the first through fourth payment rounds; (3) net eligible claims [25] of the 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims who were deemed eligible by the Fund and applied between December 29, 2022, and June 27, 2023; [26] and (4) compensation from other sources [27] received by the 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims who were deemed eligible by the Fund and applied between December 29, 2022, and June 27, 2023.

Using these data, we estimated that the amount of payments that non-9/11 claimants received, as a percentage of their net eligible claims in the first four rounds of Fund distributions, was 4.6122 percent (referred to as "GAO percentage calculation"). To estimate GAO's payment percentage, we determined the payment amounts received by non-9/11 claimants from the Fund in the first through fourth payment rounds. Next, we determined the net eligible claims of these non-9/11 claimants in each round. We divided the amount of payments by the net eligible claims to determine GAO's percentage calculation.

Using the GAO percentage calculation, we plan to estimate two amounts for purposes of the second notice: (1) the total amount needed to provide lump sum catch-up payments to potentially eligible 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims based on these victims' net eligible claims; and (2) the total amount needed to provide lump sum catch-up payments to potentially eligible 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims based on these victims' net eligible claims offset by compensation from other sources.[28] In the data provided, 1,417 of the potentially eligible 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims have reported compensation from other sources, such as court-awarded compensation.[29]

After consideration of the comments from this notice, we will issue a second ☐ **Federal Register** notice, utilizing data from the Fund to report estimated lump sum catch-up payments based on these methodologies with any changes we determine appropriate. We invite comments on all aspects of the planned methodologies proposed in this notice. After consideration of the comments from this notice, we will again seek public comment on the second **Federal Register** notice.

☐ Start Printed Page 89696

*Authority:* Pub. L. 117–328 (https://www.govinfo.gov/link/plaw/117/public/328), div. MM, 136 Stat. 4459, 6106–6111 (34 U.S.C. 20144(d)(4)(D) (https://www.govinfo.gov/link/uscode/34/20144)).

Triana McNeil,

Director, Homeland Security and Justice, U.S. Government Accountability Office.

5/28/24, 12:54 AM         Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA    Document 1-1    Filed 06/06/24    Page 5 of 8

# Footnotes

1. Public Law 117–328 (https://www.govinfo.gov/link/plaw/117/public/328), div. MM, 136 Stat. 4459, 6106–6111 (classified as amended at 34 U.S.C. 20144(d)(4)(D) (https://www.govinfo.gov/link/uscode/34/20144)). Other 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims have applied to and been determined eligible for payment from the Fund in prior rounds. Section 101 directs us to estimate catch-up payments for those who submitted eligible claims to the Fund between the date of enactment (December 29, 2022), and June 27, 2023, which is the date the application period closed for catch-up payments. In general, the deadline for submitting a claim to the Fund is not later than 90 days after obtaining a final judgment. However, the Fairness Act reopened the application period for 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims awarded final judgments before December 29, 2022, providing that these victims had 180 days from the date of enactment of the Fairness Act (June 27, 2023) to submit an application for payment to the Fund. 34 U.S.C. 20144(c)(3)(A)(ii) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

2. 34 U.S.C. 20144(c)(2) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

3. 34 U.S.C. 20144(c)(2) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

4. 34 U.S.C. 20144(c)(1) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

5. See 34 U.S.C. 20144(b)(3) (https://www.govinfo.gov/link/uscode/34/20144). Although not subject to administrative or judicial review, a claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master not later than 30 days after receipt of a written decision. Id. 20144(b)(4). Not later than 90 days after any such hearing, the Special Master must issue a final written decision affirming or amending the original decision, and that written decision is final and nonreviewable. Id.
Back to Citation

6. Public Law 114–113 (https://www.govinfo.gov/link/plaw/114/public/113), div. O, tit. IV, sec. 404, 129 Stat. 2242, 3007–3017 (classified as amended at 34 U.S.C. 20144(d)(4)(C) (https://www.govinfo.gov/link/uscode/34/20144)).
Back to Citation

7. In Re 650 Fifth Avenue and Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008) and Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y.).
Back to Citation

8. Public Law 114–113 (https://www.govinfo.gov/link/plaw/114/public/113), 129 Stat. at 3013.
Back to Citation

9. Public Law 114–113 (https://www.govinfo.gov/link/plaw/114/public/113), 129 Stat. at 3013–14.
Back to Citation

10. Id. at 3014. In the event of an adverse final judgment in Peterson or In Re 650 Fifth Avenue and Related Properties, the Special Master was to release a portion of an eligible claimant's conditional payment to such eligible claimant if the Special Master anticipates that such claimant will receive less than the amount of the conditional payment from any proceeds from the final judgment that is entered in favor of the plaintiffs. Id. Such portion shall not exceed the difference between the amount of the conditional payment and the amount the Special Master anticipates such claimant will receive from the proceeds. Id.
Back to Citation

5/28/24, 12:54 AM  Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA   Document 1-1   Filed 06/06/24   Page 6 of 8

11.  See Bank Markazi aka Central Bank of Iran v. Peterson, 578 U.S. 212 (2016); U.S. Victims of State Sponsored Terrorism Fund, "Supplemental Report from the Special Master," at 6 (August 2017).
Back to Citation

12.  U.S. Victims of State Sponsored Terrorism Fund, "Supplemental Report from the Special Master," at 6 (August 2017).
Back to Citation

13.  Id. There were 78 conditional claimants who were Peterson judgment creditors who fell into this category. Id.
Back to Citation

14.  Claimants are required to provide the Special Master with information regarding compensation from any source other than this Fund that the claimant (or, in the case of a personal representative, the victim's beneficiaries) has received or is entitled or scheduled to receive as a result of the act of international terrorism that gave rise to a claimant's final judgment, including information identifying the amount, nature, and source of such compensation. 34 U.S.C. 20144(b)(2)(B) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

15.  34 U.S.C. 20144(d)(3)(B)(i) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

16.  34 U.S.C. 20144(d)(3)(B)(iii) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

17.  34 U.S.C. 20144(d)(3)(B)(iii) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

18.  34 U.S.C. 20144(d)(4)(D)(i) (https://www.govinfo.gov/link/uscode/34/20144). As discussed in footnote 1, section 101 directs us to estimate catch-up payments for those who submitted eligible claims to the Fund between the date of enactment (December 29, 2022), and June 27, 2023, which is the date the application period closed for catch-up payments. See 34 U.S.C. 20144(c)(3)(A)(ii) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

19.  34 U.S.C. 20144(d)(4)(D)(iv) (https://www.govinfo.gov/link/uscode/34/20144). The Fairness Act directed the Special Master to authorize lump sum catch-up payments to 9/11 victims, spouses and dependents in amounts equal to those previously estimated by GAO. GAO, U.S. Victims of State Sponsored Terrorism Fund: Estimated Lump Sum Catch-Up Payments, GAO–21–105306 (Aug. 11, 2021). Additionally, not earlier than 90 days and not later than 1 year after submission of the report that is to follow this notice the Special Master is to authorize lump sum catch-up payments from the reserve fund in amounts equal to those estimated by GAO. 34 U.S.C. 20144(d)(4)(D)(iv)(II) (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

20.  34 U.S.C. 20144(d)(4)(D)(i) (https://www.govinfo.gov/link/uscode/34/20144). Further, section 101 provides for GAO to conduct this audit in accordance with 34 U.S.C. 20144(d)(3)(A) (https://www.govinfo.gov/link/uscode/34/20144), which generally requires that distributions be made on a pro rata basis and also places limits on the amount of eligible claims (referred to as "statutory caps"). For example, for individuals, the cap is $20,000,000 and for claims of non-9/11 family members when aggregated, the cap is $35,000,000. As such, we plan to use data from the Fund, to the extent available, on the claim amounts after the application of statutory caps.
Back to Citation

21.  34 U.S.C. 20144(j)(15) (https://www.govinfo.gov/link/uscode/34/20144).

5/28/24, 12:54 AM  Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA    Document 1-1    Filed 06/06/24    Page 7 of 8

Back to Citation

22. *34 U.S.C. 20144(j)(16)* (https://www.govinfo.gov/link/uscode/34/20144).
Back to Citation

23. As discussed in footnote 1, this includes some 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims who applied to and received payment from the Fund in prior rounds. If claimants applied to the Fund more than once, they only appear in the data we received the first time they applied and were determined eligible. For example, the data we received show 12 claimants of the 1983 Beirut Barracks bombing or 1996 Khobar Towers bombing attacks who received a payment in round 1, 141 in round 2, 423 in round 3, and 708 in round 4.
Back to Citation

24. For the purposes of our analysis, "net eligible claims" refers to the monetary amount of all eligible claims after the application of statutory caps by the Fund, if applicable. *34 U.S.C. 20144(d)(3)(A)* (https://www.govinfo.gov/link/uscode/34/20144). In accordance with GAO standards, we will assess the reliability and completeness of the data from the Fund to ensure that it is appropriate for these purposes.
Back to Citation

25. As of December 2023, data from the Fund on the claim amounts after the application of statutory caps ("net eligible claims") for 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims who are potentially eligible for lump sum catch-up payments was not available. This is because these claimants have not yet been included in a payment distribution that would require the application of statutory caps by the Fund. While we have data from the Fund on compensatory damages awards, we do not yet have the data with claim amounts after the application of statutory caps. We plan to work with the Fund to generate these data and to incorporate these updated claim amounts into our analysis when available.
Back to Citation

26. We received data from the Fund as of December 2023 for 1,362 claimants for the 1983 Beirut barracks bombing and 159 claimants for the 1996 Khobar Towers bombing who were deemed eligible by the Fund and applied between December 29, 2022, and June 27, 2023. We also received data on 60 victims of these attacks whose eligibility for the Fund is still being determined as of November 2023. These applications are pending because the Fund is awaiting additional documentation from these individuals that is needed to determine their claims' eligibility. Some of these 1,581 claimants may be judgment creditors in Peterson. We also received data from the Fund on the 78 conditional claimants who are Peterson judgment creditors discussed in footnote 13. Because eligibility for some of these victims is still being determined, we refer to the group as a whole as "potentially eligible" for catch-up payments.
Back to Citation

27. Claimants are required to provide the Special Master with information regarding compensation from any source other than this Fund that the claimant (or, in the case of a personal representative, the victim's beneficiaries) has received or is entitled or scheduled to receive as a result of the act of international terrorism that gave rise to a claimant's final judgment, including information identifying the amount, nature, and source of such compensation. *34 U.S.C. 20144(b)(2)(B)* (https://www.govinfo.gov/link/uscode/34/20144). We received data from the Fund on compensation from other sources for claimants who are potentially eligible for catch-up payments.
Back to Citation

28. In our prior work, we did not offset eligible 9/11 victims, spouses and dependents' net eligible claims with compensation from other sources because this population did not have qualifying compensation from other sources. Although some 9/11 claimants may have received awards from the 9/11 Victims Compensation Fund (VCF), money received from the VCF is not considered an offset for the Fund's award


5/28/24, 12:54 AM  Federal Register :: Notice of Planned Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 1983 Beirut Barrack…

Case 1:24-cv-01652-LLA   Document 1-1   Filed 06/06/24   Page 8 of 8

calculations. See U.S. Victims of State Sponsored Terrorism Fund, Frequently Asked Questions,http://www.usvsst.com/faq.php (http://www.usvsst.com/faq.php) (last accessed Dec. 4, 2023) (see 4.8 *Updated* What is a source of compensation other than the USVSST Fund?).
Back to Citation

29.  According to Fund data, compensation from other sources received by potentially eligible 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims range from $0 to approximately $5 million.
Back to Citation

[FR Doc. 2023–28674 (/d/2023-28674) Filed 12–27–23; 8:45 am]

BILLING CODE 1610–02–P

**PUBLISHED DOCUMENT**