**U.S. GOVERNMENT ACCOUNTABILITY OFFICE**

**441 G St. N.W.**
**Washington, DC  20548**

April 22, 2024

Mr. Robert J. Tolchin
The Berkman Law Office, LLC
829 E 15th Street
Brooklyn, NY 11230

Dear Mr. Tolchin:

This responds to your letter of April 1 to Comptroller General of the United States Gene Dodaro. As explained below, GAO is ensuring that we resolve the relevant issues correctly in order to meet our statutory responsibilities.

As you know, section 101 of the Fairness For 9/11 Families Act (Fairness Act) included a provision for GAO to conduct an audit and publish in the Federal Register a notice of proposed lump sum catch-up payments to certain 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims who have submitted eligible applications to the United States Victims of State Sponsored Terrorism Fund (Fund), on or after December 29, 2022, and by June 27, 2023.[1] The Fairness Act required GAO to publish a notice in the Federal Register not later than one year after December 29, 2022, provide a 30-day period for public comment, and submit a report to congressional committees and the Special Master not later than 30 days after the expiration of the comment period.[2]

Your letter raised concerns about the timeliness of GAO's work with regard to these statutory requirements. We acknowledge that we did not meet the date identified in the statute for submitting a report to congressional committees and the Special Master; however, we are taking additional measures to ensure we receive and consider comments and issues necessary to meet our statutory responsibilities. GAO determined that the best path forward to address this provision of the Fairness Act was to publish two separate Federal Register Notices on this topic, and solicit public comments after each notice, before issuing the final report. GAO issued the Federal Register Notice called for in the Fairness Act on December 28, 2023. We believe that we need to issue a second Federal Register Notice to ensure an accurate and transparent methodology for claimants to receive the correct amounts. We used this same approach in response to a similar provision in the Sudan Claims Resolution Act to calculate lump sum catch-up payments for certain 9/11 victims in 2021 (GAO-21-105306).[3] The feedback we received from those two notices led to changes in our methodology that added eligible victims.

---

[1]Fairness For 9/11 Families Act, Pub. L. No. 117-328, div. MM, § 101(b)(3)(ii), 136 Stat. 4459, 6108 (codified at 34 U.S.C. § 20144(d)(4)(D)(i)).

[2]Id. (codified at 34 U.S.C. § 20144(d)(4)(D)(i)-(iii)).

[3]See Sudan Claims Resolution Act, Pub. L. No. 116-260, div FF, tit. XVII, § 1705(b)(2), 134 Stat. 1182, 3294 (codified at 34 U.S.C. § 20144(d)(4)(C)(i)).

For GAO's work under the Fairness Act, there are multiple complex legal and methodological issues stemming from the statutory language. In response to the first Federal Register Notice, we received numerous comments that raised disparate and considered views, and it is critical that we fully consider and address them.

In addition, certain claimant data were not available in December 2023 when we issued the first notice to meet the date required by the Fairness Act. We stated in that notice that we planned to work with the Fund to generate these data and to incorporate these updated claim amounts into our analysis when available. Further, when we issued the first notice, Fund administrators had not yet finished adjudicating eligibility for all the victims who applied for catch-up payments.

When conducting work in response to congressional mandates, GAO is mindful of provisions set forth in law, including established reporting deadlines. In addition, GAO considers other factors, including independence, availability of needed information, accuracy, and transparency, in conducting our work. For this engagement, we have also kept the congressional members and staff apprised of our work and decision to follow a two-Federal Register Notice process for the reasons noted above.

You also raised concerns about GAO's methodology for determining GAO's percentage calculation. The methodology we outlined in the first Federal Register Notice for this calculation is the same as the methodology we used in our prior report in response to the Sudan Claims Resolution Act.[4] As we stated in that report, there are key differences in how the Fund calculated its payment percentage and GAO calculated the percentage for lump sum catch-up payments for 9/11 victims, spouses, and dependents. The Fund and GAO calculated percentages in different ways to fulfill distinct purposes. Section 101 of the Fairness Act calls for GAO to estimate the amount of money needed to catch up eligible 1983 Beirut Barracks bombing victims and 1996 Khobar Towers bombing victims in proportion with payments already made by the Fund to non-9/11 claimants. The methodology we used is more fully described in Enclosure II of that report, which I have enclosed with this letter.

As noted above, GAO has received additional data and comments, and we have refined our planned methodology since we issued our first Federal Register Notice. Our forthcoming Federal Register Notice will report estimated lump sum catch-up payments based on our refined methodology, including an updated estimated percentage calculation.

I appreciate the concerns raised in your letter, and I assure you that GAO takes seriously the harms your clients have suffered as the victims of terrorism. We want to make sure claimants receive the compensation to which they are entitled under the Fairness Act. We are working to issue our report as soon as possible, and we believe that the time we are taking to address the

---

[4]GAO, *U.S. Victims of State Sponsored Terrorism Fund: Estimated Lump Sum Catch-Up Payments*, GAO-21-105306 (Aug. 11, 2021) (see Enclosure II for discussion of the Fund's payment percentage and GAO's percentage calculation).

complexities of this audit will ensure an accurate and transparent methodology for claimants to receive the proper amounts.

Sincerely,

Edda Emmanuelli Perez
General Counsel

Enclosure

**GAO@100**  **U.S. GOVERNMENT ACCOUNTABILITY OFFICE**
*A Century of Non-Partisan Fact-Based Work*

**441 G St. N.W.**
**Washington, DC  20548**

August 11, 2021

Congressional Committees

**U.S. VICTIMS OF STATE SPONSORED TERRORISM FUND: Estimated Lump Sum Catch-Up Payments**

The terrorist attacks of September 11, 2001, resulted in the deaths and injuries of thousands of people. In 2015, the Justice for United States Victims of State Sponsored Terrorism Act (Terrorism Act) was enacted, which established the United States Victims of State Sponsored Terrorism Fund (Fund) to provide compensation for persons injured in acts of international state-sponsored terrorism.[1] In May 2016, the Attorney General appointed a Special Master to administer the Fund. U.S. Department of Justice (DOJ) personnel support the Fund.[2]

To date, the Fund has allocated approximately $3.3 billion in three payment rounds, which began in 2017, 2019, and 2020. In 2019, the United States Victims of State Sponsored Terrorism Fund Clarification Act (Clarification Act) amended the groups of individuals who were eligible to claim payments from the Fund.[3] These changes affected the amounts that 9/11 victims, spouses, and dependents could claim from the Fund, compared with 9/11 family members, as described in more detail below. Family members are defined as immediate family members of a 9/11 victim who are not the victim's spouse or dependent (for example, a nondependent sibling or parent).

The Sudan Claims Resolution Act includes provisions for GAO to (1) estimate lump sum catch-up payments to eligible 9/11 victims, spouses, and dependents[4] that would result in the percentage of claims received from the Fund being equal to the percentage of claims of 9/11 family members received from the Fund; and (2) estimate amounts of lump sum catch-up payments for 9/11 victims, spouses, and dependents.[5]

To conduct this work, we reviewed relevant documents, such as the Special Master reports to Congress; interviewed DOJ officials who support the Fund; and analyzed Fund data. In March

---

[1]Pub. L. No. 114–113, div. O, tit. IV, § 404, 129 Stat. 2242, 3007–3017 (classified as amended at 34 U.S.C. § 20144).

[2]34 U.S.C. § 20144(b)(1).

[3]Pub. L. No. 116-69, tit. VII, 133 Stat. 1134, 1140-1144 (2019).

[4]See 34 U.S.C. § 20144(j)(10)–(14) (defining the terms ''9/11 victim,'' ''9/11 spouse,'' and ''9/11 dependent,'' among others); see also 28 C.F.R. §§ 104.2, 104.3.

[5]Pub. L. No. 116–260, div. FF, tit. XVII, § 1705, 134 Stat. 1182, 3293–3294, amending Pub. L. 114–113, div. O, tit. IV, § 404, 129 Stat 2242, 3010–3011 (classified as amended at 34 U.S.C. §20144(d)(4)(C)). Further, the Sudan Claims Resolution Act contains a provision for GAO to submit to the Committee on the Judiciary and the Committee on Appropriations of the Senate, the Committee on the Judiciary and the Committee on Appropriations of the House of Representatives, and the Special Master a report that includes the following: (1) the amount of lump sum catch-up payment for each 9/11 victim, (2) the amount of lump sum catch-up payment for each 9/11 spouse, (3) the amount of lump sum catch-up payment for each 9/11 dependent, and (4) the total amount of lump sum catch-up payments.

2021 and June 2021, we published *Federal Register* notices requesting public comments on our methodology for calculating lump sum catch-up payments and estimated lump sum catch-up payments. (See enc. I for more information on our scope and methodology).[6]

While the Terrorism Act, as amended, contains a provision for us to estimate catch-up payments, it does not provide funding or contain any authorization for the Fund to make such catch-up payments. Additionally, as discussed above, GAO is to estimate the amount needed to provide lump sum catch-up payments to 9/11 victims, spouses, and dependents in an equal percentage as the payments that have been made to 9/11 family members in rounds one and two (referred to as GAO's percentage calculation). This differs from the payment percentage that the Fund calculates to determine a payment amount for each claimant based on the amount of money allocated for each payment round. The Fund and GAO's percentage calculation differ because they fulfill different purposes. The Fund's calculation is to determine the payment percentage for claimants that include victims from other terrorist attacks. Our percentage calculation focused only on 9/11 family members, not all eligible claimants, in order for us to determine lump sum catch-up payments for 9/11 victims, spouses, and dependents, as called for in the mandate. (See enc. II for more information on the differences between the Fund and GAO percentage calculations).

We conducted this performance audit from February 2021 to August 2021 in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

**Results in Brief**

In summary, we estimated that lump sum catch-up payments to 5,364 9/11 victims, spouses, and dependents in our population would total about $2.7 billion (see fig. 1).[7] The population for which we are estimating lump sum catch-up payments consists of 9/11 victims, spouses, and dependents who applied for payments in the first, second, or third round of payments from the Fund and who did not receive payments from the Fund in rounds one or two.[8] We also estimated that, if authorized, lump sum catch-up payments to these 5,364 9/11 victims, spouses, and dependents would vary based on their net eligible claims[9] and other factors that the Fund is to consider when determining individual payment amounts. These other factors include the application of statutory caps and other sources of compensation, such as court

---

[6]Notice of Methodology for Estimating Lump Sum Catch-up Payments to Eligible 9/11 Victims, 9/11 Spouses and 9/11 Dependents; Request for Comment, 86 Fed. Reg. 16,211 (Mar. 26, 2021); Notice of Estimated Lump Sum Catch-up Payments; Request for Comment, 86 Fed. Reg. 31,312 (June 11, 2021).

[7]For a description of our methodology for this amount, see enc. I.

[8]See 34 U.S.C. § 20144(c), (d)(4)(C). According to the Fund's June 2020 congressional report, the applications of eligible claimants who applied in rounds one or two were carried forward into subsequent payment rounds.

[9]For the purposes of our analysis, "net eligible claims" refers to the monetary amount of all eligible claims after the application of relevant statutory caps by the Fund, if applicable. 34 U.S.C. § 20144(d)(3)(A).

awarded compensation related to the act of international terrorism that gave rise to a claimant's final judgment.[10]

We are not making any recommendations in this report.

Figure 1: Amount Allocated for Payments by the U.S. Victims of State Sponsored Terrorism Fund (Fund) and Estimated Amount of Lump Sum Catch-Up Payments



Sources: U.S. Department of Justice (DOJ) and GAO analysis of DOJ information.  |  GAO-21-105306

[a]The Fund approved applications of 13,883 claimants.

[b]GAO calculated that 5,364 claimants would receive lump sum catch-up payments.

## Background

There are two funds that can provide certain 9/11 victims, spouses, dependents, and family members with compensation—the Victim Compensation Fund and the United States Victims of State Sponsored Terrorism Fund.

- **Victim Compensation Fund (VCF)**. The VCF was first established in the Air Transportation System Safety and Stabilization Act.[11] The VCF has generally been funded through federal appropriations and was extended through at least fiscal year 2092.[12] Eligible persons include individuals who suffered physical harm or were killed as a result of the terrorist-related aircraft crashes of September 11, 2001, or the debris removal efforts that took place in the immediate aftermath of those crashes, or their spouses and dependents.[13]

---

[10]See 34 U.S.C. § 20144(c)-(d). For example, for individuals, the cap is $20,000,000 and for claims of related claimants when aggregated the cap has been $35,000,000 (however, beginning with the third round distribution, the Clarification Act made certain changes to statutory caps for related 9/11 claimants in a family group). To calculate the amount of 9/11 family members' net eligible claims, we used rounds one and two data, the rounds in which the family members' payments were received, from the Fund on the claim amounts after the application of statutory caps. To calculate the amount of 9/11 victims, spouses, and dependents' net eligible claims, we used round three data from the Fund on the claim amounts after the application of statutory caps.

[11]See Pub. L. 107-42, tit. IV, 115 Stat. 230 (codified as amended at 49 U.S.C. § 40101 note).

[12]See Pub. L. 116-34, 133 Stat. 1040 (2019).

[13]See 28 C.F.R. §§ 104.2 (defining eligible claimants); 104.3 (defining the terms "victim," "spouse" and "dependent").

- **United States Victims of State Sponsored Terrorism Fund**. The Fund was first established in 2015 by the Terrorism Act and amended in 2019 by the Clarification Act.[14] To be eligible to receive compensation from the Fund, a claimant must hold a judgment, decree, or order on liability and damages from a federal district court against a designated state sponsor of terrorism. This claim amount and payment amount may not be the same because the Fund only makes payments to claimants with money that the Fund has allocated for each payment round, in accordance with specific statutory requirements including, for example, that payments be made on a pro rata basis.[15] This Fund compensates victims or immediate family members of victims from 9/11 and other acts of state sponsored terrorism.

The Fund is administered by a Special Master and supported by DOJ personnel. The first round of payments was distributed in early 2017, and the second round beginning in early 2019. As of June 2021, the Fund had allocated $1.075 billion for third round payments in 2020 and was in the process of distributing payments on a rolling basis (see fig. 2).[16]



Figure 2: Total Amounts Allocated by the U.S Victims of State Sponsored Terrorism Fund

Sources: U.S. Department of Justice (DOJ) and GAO analysis of DOJ information.  |  GAO-21-105306

---

[14]See 34 U.S.C. § 20144.

[15]See 34 U.S.C. § 20144(b)(2)(B), (c) (directing that payments from available funds be made on a pro rata basis, that is "based on the amounts outstanding and unpaid on eligible claims").

[16]See U.S. Victims of State Sponsored Terrorism Fund, "Special Master Report Regarding the Third Distribution," at 3 (June 2020); U.S. Victims of State Sponsored Terrorism Fund, http://www.usvsst.com.

[a]The United States Victims of State Sponsored Terrorism Fund Clarification Act amended the statute governing the Fund to divide all available funds, beginning with the third round, in half and allocate 50 percent of the available funds to non-9/11 related victims and the remaining 50 percent of the available funds to 9/11 related victims. Pub. L. No. 116-69, tit. VII, § 1701, 133 Stat. 1134, 1140-1144 (codified as amended at 34 U.S.C. § 20144(d)(3)).

As enacted in 2015, the Terrorism Act precluded claimants (generally 9/11 victims, spouses, and dependents) who had received an award determination from the VCF from receiving payments from the United States Victims of State Sponsored Terrorism Fund, even if their claims were determined eligible by the Special Master.[17] Because 9/11 family members (that is, immediate family members of 9/11 victims who are not spouses or dependents, such as nondependent parents and siblings) generally did not receive award determinations from the VCF, they were not precluded from receiving payments from the Fund if their claims were determined eligible. In 2019, the Clarification Act removed the language precluding 9/11-related claimants (that is, 9/11 victims, spouses, and dependents) who received award determinations from the VCF from receiving payments from the Fund.[18] Figure 3 describes additional details on the VCF and the Fund.

---

[17]See Pub. L. No. 114-113, div. O, tit. IV, § 404, 129 Stat. at 3010-3011. An award determination means a letter from the Special Master of the VCF indicating the total amount of compensation to which a claimant is entitled for a claim from the VCF. See Pub. L. No. 114-113, 129 Stat. at 3002.

[18]Pub. L. No. 116-69, div. B, tit. VII, § 1701, 133 Stat. 1134, 1140-1141 (2019).

**Figure 3: Time Line of Key Events Related to the September 11th Victim Compensation Fund and U.S. Victims of State Sponsored Terrorism Fund**



Source: GAO summary of U.S. Department of Justice and other information.  |  GAO-21-105306

[a]Pub. L. No. 107-42, tit. IV, 115 Stat. 230 (2001).

[b]Pub. L. No. 114–113, div. O, tit. IV, § 404, 129 Stat. 2242, 3007–3017 (2015).

[c]Pub. L. No. 116-69, div. B, tit. VII, § 1701, 133 Stat. 1134, 1140-1141 (2019).

[d]Pub. L. No. 116–260, div. FF, tit. XVII, § 1705, 134 Stat. 1182, 3293–3294 (2020).

To receive payment from the Fund, an individual must submit a claim by the relevant payment round deadline (see fig. 4). For purposes of the Fund, the term "claim" generally refers to a claim based on compensatory damages awarded to a U.S. person in a final judgment issued by a U.S. district court under state or federal law against a foreign state that has been designated a

state sponsor of terrorism and arising from acts of international terrorism.[19] In general, a claim is determined eligible for payment from the Fund if the Special Master determines that the judgment holder (the "claimant") is a U.S. person, that the claim meets the definition of claim above, and that the claim was submitted timely.[20] Once a claim is determined eligible, the Fund is to determine the amount of payment on an individual basis in accordance with specific statutory requirements, including that payments be made on a pro rata basis, that compensatory damages awards on which claims are based are subject to statutory caps, and that applicants must provide information regarding compensation from sources other than the Fund, among other requirements.[21] These sources other than the Fund include payments already made on claimants' judgments, such as court awarded compensation related to the act of international terrorism that gave rise to a claimant's final judgment.[22] Our report focuses on 9/11 claimants.

**Figure 4: Claimant Application Process for Payments under the U.S. Victims of State Sponsored Terrorism Fund (Fund)**



| Judgment | Application | Calculation | Payments |
|---|---|---|---|
| The claimant takes private action to get a federal district court judgment against a state sponsor of terrorism. The U.S. government is not a party to these underlying lawsuits. | The Fund receives applications from the claimant and determines their eligibility. | The Fund uses the amount of compensatory damages in the claimant's judgment for their payment calculation and applies statutory requirements. | The Fund makes payments pro rata and calculates each distribution of payments individually. Eligible claimants in one distribution are eligible for future distributions. |

Source: GAO analysis of U.S. Department of Justice information.  |  GAO-21-105306

## Estimated Lump Sum Catch-Up Payments Total About $2.7 Billion

We estimated that lump sum catch-up payments to 5,364 9/11 victims, spouses, and dependents would total about $2.7 billion. This amount would ensure that the proportion of payments provided for claims submitted by 9/11 victims, spouses, and dependents would be equal to the proportion of payments provided for claims submitted by 9/11 family members (see fig. 5).

---

[19] 34 U.S.C. § 20144(c)(2).

[20] 34 U.S.C. § 20144(c)(1).

[21] See 34 U.S.C. § 20144(b)(2)(B), (c) (directing that payments from available funds be made on a pro rata basis, that is "based on the amounts outstanding and unpaid on eligible claims"), (d). For individuals, the statutory cap is $20,000,000 and for claims of family members when aggregated the cap has been $35,000,000 (however, beginning with the third round distribution, the Clarification Act made certain changes to statutory caps for related 9/11 claimants in a family group).

[22] See U.S. Victims of State Sponsored Terrorism Fund, "Payment Calculation Explanation for 9/11-Related Claims," (August 2020).

- We estimated that the amount of payments that 9/11 family members—siblings and parents—received, as a percentage of their net eligible claims during the first two rounds of the Fund distributions, was 5.8573 percent.[23] They received about $1.2 billion of the $19.7 billion net eligible claims.[24]
- Based on that estimated 5.8573 percent net eligible claims received by 9/11 family members, we estimated the catch-up payments for 9/11 victims, spouses, and dependents was about $2.7 billion, as their net eligible claims were about $45.3 billion.

**Figure 5: Formula for Estimating Total Lump Sum Catch-Up Payment Amount to 9/11 Victims, Spouses, and Dependents**



Source: GAO analysis of U.S. Department of Justice data.  |  GAO-21-105306

Notes: Net eligible claims represent the compensatory damages of the 9/11 claimants after applying statutory caps.

[a]For 9/11 family members, we calculated net eligible claims using data from the first and second round.

[b]For 9/11 victims, spouses, and dependents, we calculated net eligible claims using data from the third round.

## Estimated Average Lump Sum Catch-Up Payments Differ Due to Certain Factors

We determined that if lump sum catch-up payments to 9/11 victims, spouses, and dependents are authorized, such payments would vary for individuals based on a number of factors, including, for example, compensation received by individuals from other sources, such as payments already paid on a claimant's judgment and the amount of their net eligible claims.[25] The amounts of estimated lump sum catch-up payments vary across the three groups of 9/11

---

[23]The Fund and GAO calculated percentages—17.85 percent and 5.8573 percent, respectively—in different ways to fulfill distinct purposes. Claimants receiving payments in both rounds received 17.8516 percent of their net eligible claims. However, these claimants included victims from other terrorist attacks. Among other things, our percentage calculation focused only on 9/11 victims, spouses, and dependents, as called for in the mandate.

[24]Approximately $3.3 billion in total amount was allocated by the Fund across three distribution rounds. The payment amount of $1.2 billion represents the portion of the $3.3 billion that only 9/11 family members received in rounds one and two of the Fund.

[25]For example, once a claim is determined eligible, the Fund is to determine the amount of payment on an individual basis in accordance with specific statutory requirements, including that payments be made on a pro rata basis, that compensatory damages awards on which claims are based are subject to statutory caps, and that applicants must provide information regarding compensation from sources other than the Fund (such as payments already made on claimants' judgments ), among other requirements. See 34 U.S.C. § 20144(b)(2)(B), (c) (directing that payments from available funds be made on a pro rata basis, that is "based on the amounts outstanding and unpaid on eligible claims"), (d).

victims, spouses, and dependents. Figure 6 illustrates how the total amounts of estimated lump sum catch-up payments for 9/11 victims, spouses, and dependents differ.

**Figure 6: Estimated Total Lump Sum Catch-Up Payments for 9/11 Victims, Spouses, and Dependents**



Source: GAO analysis of U.S. Department of Justice data. | GAO-21-105306

We determined that net eligible claims for these groups differed. Victims' net eligible claims ranged from $769,231 to $20 million, while spouses' net eligible claims ranged from $4.8 million to $12.5 million, and those of dependents ranged from $3.1 million to $8.5 million (see fig. 7).

We also estimated that the potential lump sum catch-up payments would vary widely based on the range of net eligible claims within groups and across the three groups of 9/11 victims, spouses, and dependents (see fig. 7). Below is a summary of how estimated lump sum catch-up payments could vary across all groups:

- **Victims**: The minimum amount is $45,056, and maximum amount is $1,171,460, with an average of $445,634;
- **Spouses**: The minimum amount is $281,601, and maximum amount is $732,163, with an average of $675,423;[26] and
- **Dependents**: The minimum amount is $179,644, and maximum amount is $497,871; with an average of $432,303.

---

[26]Our analysis of Fund data suggests that the estimated average lump sum catch-up payments for spouses would be larger than that of the victims and dependents. This is likely because a large number of spouses had relatively large net eligible claims of around $12 million, whereas victims' net eligible claims were more evenly dispersed, from $0.8 million to $20 million. Given that the estimated lump sum catch-up payments are derived from multiplying the calculated percentage by the net eligible claims, a cluster of large net eligible claims for spouses would result in larger average catch-up payments, if such payments are authorized.

**Figure 7: Minimum, Maximum, and Average Amounts of Net Eligible Claims and Estimated Catch-Up Payments for 9/11 Victims, Spouses, and Dependents**



Source: GAO analysis of U.S. Department of Justice data.  |  GAO-21-105306

Notes: For the purposes of our analysis, "net eligible claims" refers to the monetary amount of all eligible claims after the application of relevant statutory caps by the United States Victims of State Sponsored Terrorism Fund, if applicable. 34 U.S.C. § 20144(d)(3)(A). For a description of the methodology for GAO's percentage calculation see enc. III.

[a]If lump sum catch-up payments are authorized, such payments would vary for individuals based on a number of factors. For example, the Fund is to determine the amount of payment on an individual basis in accordance with specific statutory requirements, including that payments be made on a pro rata basis, that compensatory damages awards on which claims are based are subject to statutory caps, and that applicants must provide information regarding compensation from sources other than the Fund (such as payments already made on claimants' judgments), among other requirements. See 34 U.S.C. § 20144(b)(2)(B), (c) (directing that payments from available funds be made on a pro rata basis, that is "based on the amounts outstanding and unpaid on eligible claims"), (d).

## Agency Comments

We provided a draft of this report to the U.S. Department of Justice (DOJ) for review and comment. DOJ told us that they had no comments on the draft report.

- - - - -

We are sending copies of this report to the appropriate congressional committees, the Special Master of the Fund, and other interested parties. In addition, the report will be available at no charge on the GAO website at http://www.gao.gov.

If you or your staff members have any questions about this report, please contact us at (202) 512-8777 or McNeilT@gao.gov and (202) 512-4128 or BairJ@gao.gov. Contact points for our offices of Congressional Relations and Public Affairs may be found on the last page of this report. Key contributors to this report were Charles Michael Johnson, Jr. (Managing Director), Thomas Melito (Managing Director), David Lutter (Assistant Director), Kim Frankena (Assistant Director), Josh Diosomito (Analyst-In-Charge), Nasreen Badat, David Ballard, James Boohaker, Ming Chen, Benjamin Crossley, Helen Desaulniers, Susan Hsu, Kristen Kociolek, Dan Luo, Amanda Miller, Jan Montgomery, Zoe Need, Heidi Nielson, and Kevin Reeves.

Triana McNeil
Director, Homeland Security and Justice

Jason Bair
Director, International Affairs and Trade

Enclosures – 3

*List of Committees*

The Honorable Patrick J. Leahy
Chairman
The Honorable Richard C. Shelby
Vice Chairman
Committee on Appropriations
United States Senate

The Honorable Robert Menendez
Chairman
The Honorable James E. Risch
Ranking Member
Committee on Foreign Relations
United States Senate

The Honorable Dick Durbin
Chairman
The Honorable Chuck Grassley
Ranking Member
Committee on the Judiciary
United States Senate

The Honorable Rosa DeLauro
Chairwoman
The Honorable Kay Granger
Ranking Member
Committee on Appropriations
House of Representatives

The Honorable Gregory W. Meeks
Chairman
The Honorable Michael McCaul
Ranking Member
Committee on Foreign Affairs
House of Representatives

The Honorable Jerry Nadler
Chairman
The Honorable Jim Jordan
Ranking Member
Committee on the Judiciary
House of Representatives

**Enclosure I: Objectives, Scope, and Methodology**

Our objectives were to (1) estimate the lump sum catch-up payment amount that would result in the percentage of the claims received from the United States Victims of State Sponsored Terrorism Fund (Fund) for 9/11 victims, spouses, and dependents being equal to the percentage of the claims received from the Fund for 9/11 family members; and (2) estimate the average amounts of lump sum catch-up payments for 9/11 victims, spouses, and dependents.

To determine the estimated lump sum catch-up payment amount, we obtained Fund data from the U.S. Department of Justice (DOJ). We obtained spreadsheets of Fund data that included information on claimants in each round of the Fund, such as their 9/11 relationship, net eligible claims after the Fund applied statutory caps, their payment amounts, and whether their payment amounts were net zero.[27]

First, we determined the payments from the Fund received by 9/11 family members in the first and second payment rounds. Next, we determined the net eligible claims of these 9/11 family members in the first and second payment rounds. We divided the amount of payments by the net eligible claims to determine the percentage of the payments that those 9/11 family members received from the Fund. Second, we determined the net eligible claims of the 9/11 victims, spouses, and dependents who were eligible as of the third round of the Fund.[28] Finally, we multiplied this amount by the percentage that we calculated above to estimate the total amount of funding needed to provide lump sum catch-up payments to 9/11 victims, spouses, and dependents, in an equal percentage as called for in the mandate.

We assessed the reliability of the Fund data by conducting electronic testing for outliers and missing data, reviewing related documentation, and interviewing knowledgeable agency officials. Our review of the data found it to be sufficiently reliable for the purposes of estimating potential catch-up payments for eligible claimants. However, with regard to summary data that the Fund provided on the dates of claimants' final judgments, we found limitations with these data for the purposes of determining which claimants had final judgments prior to September 14, 2018.[29] As a result of these limitations and comments, we did not limit our population based on judgment dates.

To estimate the average amounts of lump sum catch-up payments for 9/11 victims, spouses, and dependents, we first applied the percentage calculated above to the net eligible claims of each 9/11 victim, spouse, and dependent who was eligible as of the third round of the Fund. Then, we added together the payment amounts we calculated for each group and divided that amount by the number of individuals in each group. We also developed other statistics of the

---

[27]According to DOJ officials that support the Fund, some 9/11 related claimants received a judgment but a payment amount of $0, therefore a "net zero" payment, in the first or second distribution round of the Fund due to a statutory preclusion.

[28]These claimants did not receive a payment in the first or second round of the Fund.

[29]According to DOJ officials that support the Fund, their summary information on judgments by claimant was for internal purposes and did not include some judgment dates for claimants. Specifically, the summary data contained information on judgments for each claimant in the third distribution; but for some claimants who had multiple judgments, only the most recent judgment was included, as it incorporated the amounts of any prior judgments. All judgment dates would have been included in individual case files.

**Enclosure I:**

payments by group, including the estimated minimum and maximum amounts of catch-up payments.

**Enclosure II: Summary of Public Comments on *Federal Register* Notices**

**Over 2,000 Comments Received on Two *Federal Register* Notices**

On March 26, 2021, we published a *Federal Register* notice that detailed our proposed methodology to estimate lump sum catch-up payments for 9/11 victims, spouses, and dependents.[30] In our initial methodology, we planned to limit the population of claimants receiving catch-up payments to eligible 9/11 victims, spouses, and dependents who had received judgments prior to the deadline—September 14, 2018—for the second distribution (see enc. III for more details on the two *Federal Register* notices).

We received 1,925 comments on this notice, which we summarized in our notice published on June 11.[31] Individuals submitted 1,910 of these comments, and groups or organizations submitted 15 of these comments. We received about 94 percent of the comments over email and the rest by voicemail or in letters. The great majority of comments received expressed disagreement with the proposed use of September 14, 2018, as the date by which claimants must have had a final judgment to be eligible for catch-up payments. Other comments included requests to use the United States Victims of State Sponsored Terrorism Fund's (Fund) payment percentage from the first and second rounds, discussion about the eligibility of certain groups for catch-up payments, and other issues.

Our second *Federal Register* notice contained our revised methodology for calculating lump sum catch-up payments and the estimated amount needed for the payments. We explained that given data limitations and the comments received, we revised our population to include all eligible claimants who are 9/11 victims, spouses, and dependents who submitted applications by February 19, 2020, the deadline for the third round distribution of the Fund.

We received 343 public comments on the second notice. The majority of these comments disagreed with GAO's calculation of the percentage to be used to determine catch-up payments for 9/11 victims, spouses, and dependents. For example, these commenters questioned why GAO's percentage was not the same as the percentage calculated by the Fund (17.85 percent). Individuals submitted 338 of these comments, and groups or organizations submitted five of these comments. We received about 83 percent of these comments over email and the rest by voicemail. A few comments included issues related to specific claimants, including comments that all 9/11 claimants should be eligible for potential lump sum catch-up payments.

**The Fund's Payment Percentage and GAO's Percentage Calculations Differ**

In response to these comments, we highlight the key differences in how the Fund calculated its payment percentage and GAO calculated the percentage of lump sum catch-up payments for 9/11 victims, spouses, and dependents. The Fund and GAO calculated percentages in different ways to fulfill distinct purposes.

First, the Fund's mission was to distribute the available amount of money in the Fund—a known amount—among Fund claimants, whereas GAO's mandate was to estimate the amount of money needed to catch up on payments to 9/11 victims, spouses, and dependents, in

---

[30]86 Fed. Reg. 16,211 (Mar. 26, 2021).

[31]For a summary of comments received, see 86 Fed. Reg. at 31,313-31,314.

**Enclosure II:**

proportion with payments already made to 9/11 family members.[32] Second, in its calculation of the payment percentage, the Fund accounted for all eligible Fund claimants, including 9/11 and non-9/11 claimants, whereas GAO, in accordance with the mandate, included eligible claimants for only 9/11 family members in the first and second rounds of distributions from the Fund.

Payment Percentage Calculation by the Fund

The Fund calculated a payment percentage based on the available amounts of money allocated for each distribution round of the Fund and used the percentage to determine a payment amount. These percentages are the amount of funds available to pay all eligible claimants divided by their net eligible claims after accounting for compensation from sources other than this Fund. The Fund's payment percentage was 13.6561 percent for round one and 4.1955 percent for round two. When adding the first two distribution payment percentages together, claimants receiving payments in both rounds received 17.8516 percent of their net eligible claims. These eligible claimants included 9/11 victims, spouses, dependents, and family members, as well as non-9/11 related claimants (see fig. 8).

Percentage Calculation by GAO

GAO's mandate is to estimate the amount needed to provide lump sum catch-up payments to 9/11 victims, spouses, and dependents in an equal percentage as the payments that have been made to 9/11 family members in rounds one and two. As described earlier, GAO calculated the percentage by dividing the payments received by 9/11 family members in rounds one and two by the net eligible claims of these 9/11 family members. These claimants received 5.8573 percent of their net eligible claims.

In addition to differences in the percentage calculations, according to the Fund's data, 422 9/11 family members received payments in both rounds one and two, and 2,861 family members only received payments in the second round. Further, we did not calculate lump sum catch-up payment amounts for 9/11 victims, spouses, and dependents in relation to their own family members. While we are providing summary information on the estimated lump sum catch-up payments for 9/11 victims, spouses, and dependents, if these lump sum catch-up payments were to be authorized, claimants' individual circumstances could affect the amounts of these payments.

---

[32]The Fund's payment percentage is the amount of funds available to pay all eligible claimants in a given round divided by compensatory damages after accounting for the individual and family caps, compensation from other sources, and prior payments from the Fund. In contrast, the Sudan Claims Resolution Act calls for GAO to calculate a specific percentage for these catch-up payments that is based on payments to certain 9/11 claimants only and to calculate a total amount needed to provide lump sum catch-up payments.

**Enclosure II:**

**Figure 8: Comparison of the U.S. Victims of State Sponsored Terrorism Fund's (Fund) and GAO's Payment Percentage Calculations**



Source: GAO analysis of U.S. Department of Justice information.  |  GAO-21-105306

Notes: Net eligible claims represent the compensatory damages of the 9/11 claimants after applying statutory caps.

[a]The Fund also accounted for compensation from sources other than the Fund.

[b]GAO used this percentage to calculate the lump sum catch-up payments for 9/11 victims, spouses, and dependents.

**Enclosure III:** *Federal Register* **Notices – March 26, 2021, and June 11, 2021**



Federal Register / Vol. 86, No. 57 / Friday, March 26, 2021 / Notices    **16211**

20405, at *ken.sandler@gsa.gov* or 202–219–1121. Additional information about the Committee, including meeting materials and agendas, will be available on-line at *http://www.gsa.gov/gbac*.

**SUPPLEMENTARY INFORMATION:**

**Procedures for Attendance and Public Comment**

Contact Dr. Ken Sandler, at *ken.sandler@gsa.gov*, to register to attend any of these public web-based meetings. To register, submit your full name, organization, email address, phone number, and which meeting(s) you would like to attend. Requests to attend the web-based meetings must be received by 5:00 p.m. ET, on Monday, April 5, 2021. Meeting call-in information will be provided to interested parties who register by the deadline. (GSA will be unable to provide technical assistance to any listener experiencing technical difficulties. Testing access to the web-based meeting site before the meetings is recommended.) Contact Dr. Sandler to register to provide public comment during the June 23, 2021 meeting public comment period. Registered speakers/organizations will be allowed a maximum of five minutes each and will need to provide written copies of their presentations. Requests to provide public comment at the Committee meeting must be received by 5:00 p.m., ET, on Monday, June 7, 2021.

**Background**

The Administrator of GSA established the Committee on June 20, 2011 (**Federal Register**/Vol. 76, No. 118) pursuant to Section 494 of the Energy Independence and Security Act of 2007 (EISA, 42 U.S.C. 17123). Under this authority, the Committee provides independent policy advice and recommendations to GSA to advance federal building innovations in planning, design, and operations to reduce costs, enable agency missions, enhance human health and performance, and minimize environmental impacts.

The Environmental Justice and Equity for Federal Green Buildings Task Group will identify and propose effective approaches to improve environmental justice and equity in federal sustainable building processes, enhancing engagement with communities and key partners throughout the building lifecycle.

The Federal Building Decarbonization Task Group will explore opportunities and challenges for reducing greenhouse gas emissions, in alignment with national climate goals and action plans, through the use of renewable energy,

energy efficiency, electrification and smart building technologies at federal facilities.

These web-based meetings will allow the task groups to develop consensus recommendations for deliberation by the full Committee, which will, in turn, decide whether to proceed with formal advice to GSA based upon these recommendations.

**June 23, 2021 Meeting Agenda**

• Updates and introductions
• Energy Storage Task Group: Findings & recommendations
• Environmental Justice and Equity Task Group: Interim findings
• Federal Building Decarbonization Task Group: Interim findings
• Public comment
• Next steps and closing comments

**Kevin Kampschroer,**
*Federal Director, Office of Federal High-Performance Green Buildings, Office of Government-wide Policy, General Services Administration.*

[FR Doc. 2021–06221 Filed 3–25–21; 8:45 am]

**BILLING CODE 6820–14–P**

---

**GOVERNMENT ACCOUNTABILITY OFFICE**

**Notice of Methodology for Estimating Lump Sum Catch-Up Payments to Eligible 9/11 Victims, 9/11 Spouses and 9/11 Dependents; Request for Comment**

**AGENCY:** U.S. Government Accountability Office (GAO).

**ACTION:** Notice of methodology; request for comment.

**SUMMARY:** GAO is now accepting comments on our methodology for estimating potential lump sum catch-up payments to certain 9/11 victims, 9/11 spouses, and 9/11 dependents who have submitted eligible claims for payment from the United States Victims of State Sponsored Terrorism Fund. GAO is conducting an audit and publishing this notice pursuant to the Sudan Claims Resolution Act. Comments should be sent to the email address below.

**DATES:** Interested persons are invited to submit comments on or before April 26, 2021.

**ADDRESSES:** Submit comments to *FundPaymentComments@gao.gov* or in writing to Mr. Charles Michael Johnson, Jr. at 441 G Street NW, Washington, DC 20548.

**FOR FURTHER INFORMATION CONTACT:** Charles Michael Johnson Jr. at (202) 512–7500 or *JohnsonCM@gao.gov* if you need additional information. For general

information, contact GAO's Office of Public Affairs, 202–512–4800.

**SUPPLEMENTARY INFORMATION:** Pursuant to Section 1705 of the Sudan Claims Resolution Act, GAO is conducting an audit and publishing this notice of our methodology for estimating potential lump sum catch-up payments to 9/11 victims, 9/11 spouses, and 9/11 dependents[1] who have eligible claims for payment from the United States Victims of State Sponsored Terrorism Fund (Fund), established in 2015 by the Justice for United States Victims of State Sponsored Terrorism Act (Terrorism Act).[2] While the Terrorism Act, as amended, contains a provision for us to estimate these catch-up payments, it does not currently authorize such catch-up payments to be made. The Fund is administered by a Special Master appointed by the Attorney General and supported by Department of Justice personnel.[3]

For purposes of the Fund, the term "claim" generally refers to a claim based on compensatory damages awarded to a United States person in a final judgment issued by a United States district court under State or Federal law against a foreign state that has been designated a state sponsor of terrorism and arising from acts of international terrorism.[4] In general, a claim is determined eligible for payment from the Fund if the Special Master determines that the judgment holder (referred to as a "claimant") is a United States person, that the claim at issue meets the definition of claim above, and that the claim was submitted timely.[5] The first round of payments was distributed in early 2017 and the second round in early 2019.[6] As of March 2021, the Fund had allocated $1.075 billion for third-round payments and was in the process of distributing payments on a rolling basis.[7]

As enacted, the Terrorism Act precluded claimants (generally 9/11 victims, spouses, and dependents) who had received an award from the

---

[1] See 34 U.S.C. 20144(j)(10)–(14) (defining the terms "9/11 victim," "9/11 spouse," and "9/11 dependent," among others); see also 28 CFR 104.2, 104.3.

[2] Public Law 116–260, div. FF, tit. XVII, 134 Stat. 1182, 3293–3294, amending Public Law 114–113, div. O, tit. IV, 404, 129 Stat. 2242, 3007–3017 (classified as amended at 34 U.S.C. 20144(d)(4)(C)).

[3] See 34 U.S.C. 20144(b)(1).

[4] 34 U.S.C. 20144(c)(2).

[5] 34 U.S.C. 20144(c)(1).

[6] The Fund allocated $1.1 billion for initial-round payments and $1.095 billion for second-round payments. See U.S. Victims of State Sponsored Terrorism Fund, "Special Master Report Regarding the Third Distribution," at 2 (June 2020).

[7] See id.; U.S. Victims of State Sponsored Terrorism Fund, *http://www.usvsst.com/* (last accessed Mar. 15, 2021).

**Enclosure III:**

16212 Federal Register / Vol. 86, No. 57 / Friday, March 26, 2021 / Notices

September 11th Victim Compensation Fund (VCF) from receiving payments from the United States Victims of State Sponsored Terrorism Fund, even if their claims were determined eligible by the Special Master.[8] Because 9/11 family members (*i.e.*, immediate family members of 9/11 victims who are not spouses or dependents, such as non-dependent parents and siblings) generally did not receive awards from the VCF, they were not precluded from receiving payments from the Fund if their claims were determined eligible. In 2019, the United States Victims of State Sponsored Terrorism Fund Clarification Act (Clarification Act) removed the language precluding 9/11-related claimants (*i.e.*, 9/11 victims, spouses, and dependents) who received awards from the VCF from receiving payments from the Fund.[9]

Section 1705 of the Sudan Claims Resolution Act contains a provision for GAO to conduct an audit and publish a notice estimating potential lump sum catch-up payments to 9/11 victims, 9/11 spouses, and 9/11 dependents who have eligible claims from the Fund. Specifically, we are publishing for comment our methodology for estimating potential lump-sum catch up payments in "amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of 9/11 victims, 9/11 spouses, and 9/11 dependents received from the Fund being equal to the percentage of the claims of 9/11 family members received from the Fund, as of the date of enactment."[10] For the purpose of this analysis, "9/11 family members" are eligible claimants who received payments from the Fund in the first and second rounds of payments in 2017 and 2019, respectively; and "9/11 victims, 9/11 spouses, and 9/11 dependents" are claimants who had eligible claims (based on eligible final judgments) prior to the Clarification Act, but were precluded from receiving payments from the Fund because they had received awards from the VCF.[11]

To estimate the amount(s) called for in the mandate, GAO plans to utilize data from the Fund on the following amounts: (1) Payments received by 9/11 family members in rounds one and two; (2) net eligible claims[12] of 9/11 family members who received payments in rounds one and two; and (3) net eligible claims[13] of 9/11 victims, spouses, and dependents. Using these amounts, we plan to calculate the percentage of 9/11 family members' net eligible claims that were paid from the Fund in rounds one and two. We will then apply this percentage to net eligible claims of 9/11 victims, spouses, and dependents to generate the lump sum catch-up payment amount for 9/11 victims, spouses, and dependents, in an equal percentage.

After consideration of comments from this notice, we will issue a second **Federal Register** notice, utilizing data from the Fund to report estimated lump sum catch-up payments based on this methodology with any changes we determine appropriate. We will again seek public comment on the second **Federal Register** notice.

**Authority:** Pub. L. 116–260, div. FF, tit. XVII, 1705, 134 Stat. 1182, 3293–3294 (34 U.S.C. 20144(d)(4)(C)).

**Charles Michael Johnson, Jr.,**
*Managing Director, Homeland Security and Justice, U.S. Government Accountability Office.*

[FR Doc. 2021–06084 Filed 3–25–21; 8:45 am]

BILLING CODE 1610–02–P

[8] See Public Law 114–113, div. O, tit. IV, 404, 129 Stat. 2242, 3010–3011.

[9] Public Law 116–69, div. B, tit. VII, 1701, 133 Stat. 1134, 1140–1141.

[10] 34 U.S.C. 20144(d)(4)(C)(i). Further, section 1705 provides for GAO to conduct this audit in accordance with 34 U.S.C. 20144(d)(3)(A), which generally places limits on the amount of eligible claims (referred to as "statutory caps"). For example, for individuals, the cap is generally $20,000,000 and for claims of family members when aggregated, the cap is generally $35,000,000. As such, we plan to utilize data from the Fund on the claim amounts after the application of statutory caps.

[11] In the context of the overall statutory scheme of the Fund, the population for which we are estimating "catch-up payments" are 9/11 victims, spouses, and dependents who applied for payments in the first, second, or third round of payments from the Fund; whose final judgment date was prior to the close of the application period for the second round of payments (September 14, 2018); and who did not receive payments from the Fund in rounds one or two. See 34 U.S.C. 20144(c), (d)(4)(C); U.S. Victims of State Sponsored Terrorism Fund, "Special Master Report Regarding the Third Distribution," at 2 (June 2020). According to the Fund's June 2020 congressional report, the applications of eligible claimants who applied in rounds one or two are carried forward into subsequent payment rounds.

[12] For the purposes of our analysis, "net eligible claims" refers to the monetary amount of all eligible claims after the application of statutory caps by the Fund, if applicable. 34 U.S.C. 20144(d)(3)(A). In accordance with GAO standards, we will assess the reliability and completeness of the data from the Fund to ensure that it is appropriate for these purposes.

[13] As discussed in footnote 11 above, a 9/11 victim, dependent, or spouse's net eligible claim would be included if they applied for payments in the first, second, or third round of payments from the Fund; if the date of their final judgment was prior to the close of the application period for the second round of payments (September 14, 2018); and if they did not receive a payment from the Fund in rounds one or two.

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Agency for Toxic Substances and Disease Registry

**[60Day–21–0047; Docket No. ATSDR–2021–0003]**

### Proposed Data Collection Submitted for Public Comment and Recommendations

**AGENCY:** Agency for Toxic Substances and Disease Registry (ATSDR), Department of Health and Human Services (HHS).

**ACTION:** Notice with comment period.

**SUMMARY:** The Agency for Toxic Substances and Disease Registry (ATSDR), as part of its continuing effort to reduce public burden and maximize the utility of government information, invites the general public and other Federal agencies the opportunity to comment on a proposed and/or continuing information collection, as required by the Paperwork Reduction Act of 1995. This notice invites comment on a proposed information collection project titled "Generic Clearance for the Collection of Qualitative Feedback on Agency Service Delivery." The information collection activity provides a means to garner qualitative customer and stakeholder feedback in an efficient, timely manner, in accordance with the Federal government's commitment to improving service delivery.

**DATES:** ATSDR must receive written comments on or before May 25, 2021.

**ADDRESSES:** You may submit comments, identified by Docket No. ATSDR–2021–0003 by any of the following methods:

- *Federal eRulemaking Portal: Regulations.gov.* Follow the instructions for submitting comments.
- *Mail:* Jeffrey M. Zirger, Information Collection Review Office, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS–D74, Atlanta, Georgia 30329.

*Instructions:* All submissions received must include the agency name and Docket Number. ATSDR will post, without change, all relevant comments to *Regulations.gov.*

*Please note: Submit all comments through the Federal eRulemaking portal (regulations.gov) or by U.S. mail to the address listed above.*

**FOR FURTHER INFORMATION CONTACT:** To request more information on the proposed project or to obtain a copy of the information collection plan and instruments, contact Jeffrey M. Zirger, Information Collection Review Office,

**Enclosure III:**



**31312**    Federal Register / Vol. 86, No. 111 / Friday, June 11, 2021 / Notices

and regulations to become a bank holding company and/or to acquire the assets or the ownership of, control of, or the power to vote shares of a bank or bank holding company and all of the banks and nonbanking companies owned by the bank holding company, including the companies listed below.

The public portions of the applications listed below, as well as other related filings required by the Board, if any, are available for immediate inspection at the Federal Reserve Bank(s) indicated below and at the offices of the Board of Governors. This information may also be obtained on an expedited basis, upon request, by contacting the appropriate Federal Reserve Bank and from the Board's Freedom of Information Office at *https://www.federalreserve.gov/foia/ request.htm.* Interested persons may express their views in writing on the standards enumerated in the BHC Act (12 U.S.C. 1842(c)).

Comments regarding each of these applications must be received at the Reserve Bank indicated or the offices of the Board of Governors, Ann E. Misback, Secretary of the Board, 20th Street and Constitution Avenue NW, Washington, DC 20551–0001, not later than July 12, 2021.

*A. Federal Reserve Bank of St. Louis* (Holly A. Rieser, Manager) P.O. Box 442, St. Louis, Missouri 63166–2034. Comments can also be sent electronically to *Comments.applications@stls.frb.org:*

1. *The M&P Community Bancshares, Inc. 401(k) Employee Stock Ownership Plan, Newport, Arkansas;* to acquire additional voting shares of up to 39 percent of M&P Community Bancshares, Inc., and thereby indirectly acquire additional voting shares of Merchants and Planters Bank, both of Newport, Arkansas.

Board of Governors of the Federal Reserve System, June 8, 2021.

**Michele Taylor Fennell,**
*Deputy Associate Secretary of the Board.*
[FR Doc. 2021–12322 Filed 6–10–21; 8:45 am]
**BILLING CODE P**

---

**GENERAL SERVICES ADMINISTRATION**

[Notice-WWICC–2021–01; Docket No. 2021–0003; Sequence No. 1]

**World War One Centennial Commission; Notification of Upcoming Public Advisory Meeting; Correction**

**AGENCY:** World War One Centennial Commission; General Services Administration.

**ACTION:** Notice; correction.

**SUMMARY:** GSA published a notice in the **Federal Register** of Friday, May 28, 2021, announcing a meeting of an upcoming public advisory meeting. The notice contained an incorrect date. This notice corrects that date.

**FOR FURTHER INFORMATION CONTACT:** Daniel S. Dayton, Designated Federal Officer, World War 1 Centennial Commission, 701 Pennsylvania Avenue NW, 123, Washington, DC 20004–2608, at 202–380–0725 (Note: This is not a toll-free number).

**Correction**

In the **Federal Register** of Friday, May 28, 2021, in FR Doc. 2021–11312, on page 28833, second column, correct the **DATES** section by removing Wednesday, June 23, 2021 and adding Wednesday, July 14, 2021 in its place.

**David Coscia,**
*Agency Liaison Officer, Office of Presidential & Congressional Agency Liaison Services, General Services Administration.*
[FR Doc. 2021–12308 Filed 6–10–21; 8:45 am]
**BILLING CODE 6820–95–P**

---

**GOVERNMENT ACCOUNTABILITY OFFICE**

**Notice of Estimated Lump Sum Catch-Up Payments to Eligible 9/11 Victims, 9/11 Spouses, and 9/11 Dependents; Request for Comment**

**AGENCY:** U.S. Government Accountability Office (GAO).

**ACTION:** Notice of estimated lump sum catch-up payments; request for comment.

**SUMMARY:** GAO is now accepting comments on estimated potential lump sum catch-up payments to certain 9/11 victims, 9/11 spouses, and 9/11 dependents who have submitted eligible claims for payment from the United States Victims of State Sponsored Terrorism Fund. GAO is conducting a review and publishing this notice pursuant to the requirements of the Sudan Claims Resolution Act. Comments should be sent to the email address below.

**DATES:** Interested persons are invited to submit comments on or before July 12, 2021.

**ADDRESSES:** Submit comments to *FundPaymentComments@gao.gov* or in writing to Mr. Charles Michael Johnson, Jr. at 441 G Street NW, Washington, DC 20548.

**FOR FURTHER INFORMATION CONTACT:** Charles Michael Johnson, Jr. at (202)

512–7500 or *JohnsonCM@gao.gov* if you need additional information. For general information, contact GAO's Office of Public Affairs, 202–512–4800.

**SUPPLEMENTARY INFORMATION:**

**Background**

On March 26, 2021, GAO published a notice (86 FR 16211) of our methodology for estimating certain lump sum catch-up payments. The supplementary information included with the notice explained that, pursuant to Section 1705 of the Sudan Claims Resolution Act,[1] GAO is conducting a review and publishing notices for estimating potential lump sum catch-up payments to 9/11 victims, 9/11 spouses, and 9/11 dependents[2] who have eligible claims for payment from the United States Victims of State Sponsored Terrorism Fund (Fund). The Fund, which is administered by a Special Master and supported by Department of Justice (DOJ) personnel,[3] was established in 2015 by the Justice for United States Victims of State Sponsored Terrorism Act (Terrorism Act).[4] In 2019, the United States Victims of State Sponsored Terrorism Fund Clarification Act (Clarification Act) removed language from the Terrorism Act precluding 9/11-related claimants[5] who received awards from the Victim Compensation Fund (VCF) from receiving payments from the Fund.[6] However, because 9/11 family members

---

[1] Public Law 116–260, div. FF, tit. XVII, sec. 1705, 134 Stat. 1182, 3293–3294, amending Public Law 114–113, div. O, tit. IV, sec. 404, 129 Stat 2242, 3010–3011 (classified as amended at 34 U.S.C. 20144(d)(4)(C)).

[2] See 34 U.S.C. 20144(j)(10)–(14) (defining the terms "9/11 victim," "9/11 spouse," and "9/11 dependent," among others); see also 28 CFR 104.2, 104.3.

[3] See 34 U.S.C. 20144(b)(1).

[4] Public Law 114–113, div. O, tit. IV, sec. 404, 129 Stat. 2242, 3007–3017 (classified as amended at 34 U.S.C. 20144).

[5] "Claimants" hold final judgments issued by a United States district court under State or Federal Law against a foreign state that has been designated a state sponsor of terrorism and arising from acts of international terrorism. 34 U.S.C. 20144(c)(2). For purposes of the Fund, the term "claim" generally refers to a claim based on compensatory damages awarded to a United States person in a final judgment issued by a United States district court under State or Federal law against a foreign state that has been designated a state sponsor of terrorism and arising from acts of international terrorism. In general, a claim is determined eligible for payment from the Fund if the Special Master determines that the judgment holder (referred to as a "claimant") is a United States person, that the claim at issue meets the definition of claim above, and that the claim was submitted timely.

[6] Public Law 116–69, div. B, tit. VII, sec. 1701, 133 Stat. 1134, 1140–1141. The VCF provides compensation to those present at the World Trade Center on September 11, 2001, at other crash sites, or in the New York City Exposure Zone, or their personal representative.

**Enclosure III:**

(_i.e._, immediate family members of 9/11 victims who are not spouses or dependents, such as non-dependent parents and siblings) had not received awards from the VCF, they were not precluded from receiving payments from the Fund if their claims were determined eligible. The first round of payments was distributed in early 2017 and the second round in early 2019.[7] As of June 2021, the Fund had allocated $1.075 billion for third-round payments and was in the process of distributing payments on a rolling basis.[8] According to comments received on our first notice, certain 9/11 victims, spouses, and dependents have worked with members of Congress related to these catch-up payments. While the Terrorism Act, as amended, contains a provision for us to estimate catch-up payments, it does not currently authorize such catch-up payments to be made. The Fund would be responsible for making actual payments if authorized.

**Summary of Comments**

GAO received a total of 1,925 comments by the closing date of April 26, 2021.[9] GAO received 1,910 comments from individuals or anonymous commenters and 15 comments from organizations.[10] GAO received about 94 percent of comments by email; the remaining comments were received in voicemails or letters. GAO has carefully considered all comments received. Below is a summary of the types of comments GAO received and GAO's response.

_Opposition to Use of Second Round Judgment Date_

The great majority of comments received expressed disagreement with the proposed use of September 14, 2018, the close of the application period for the second round of payments, as the date by which claimants must have had a final judgment to be eligible for catch-up payments. Commentators opposing this date raised two consistent arguments for why the date should not be used. First, commentators explained that, because of the statutory bar that

was in place at the time of the first and second rounds of payments from the Fund, the majority of otherwise eligible victims, spouses, and dependents did not seek final damages judgments before September 14, 2018, on the advice of counsel. They explained that such claims for damages would have been frivolous and administratively burdensome given the bar to recovery from the Fund. Second, commentators opposing this date also argued that Congress' intent in passing the Sudan Claims Resolution Act was to provide for the estimation of catch-up payments for 9/11 victims, spouses, and dependents who had received payments from the VCF and had not received payments from the Fund in rounds one or two. Commentators said that by using September 14, 2018 as the cut-off date, GAO would exclude most of this population and underestimate the number of individuals eligible for catch-up payments.

_GAO Response:_ GAO's calculation will now include all eligible claimants who are 9/11 victims, spouses, and dependents who submitted applications by February 19, 2020, the deadline for the third round distribution of the Fund.[11] We previously limited the population to those 9/11 victims, spouses and dependents who would have been eligible to receive a payment from the Fund in the first or second round but for the language in the Terrorism Act precluding claimants who received awards from the VCF from receiving payments from the Fund. For that reason, we had planned to limit the population to 9/11 victims, spouses and dependents who had eligible final judgments prior to the close of the application period for the second round of payments, September 14, 2018, and therefore would have been eligible for payment by that time.[12] We based this approach on our understanding of the specific procedures for obtaining payments as set forth in the Terrorism Act and described by DOJ officials supporting the Fund.

GAO revised the population for the purposes of this estimation partially in

response to the arguments raised by commentators opposed to the September 14, 2018 cut-off date explaining the reasons why eligible claimants generally would not have pursued final judgments by this date. In addition, according to GAO's analysis, the Fund's summary data on the dates of certain claimants' final judgments included only the most recent judgment date. According to the DOJ officials that support the Fund, the summary data on these judgments were compiled for internal purposes and not for the purpose of calculating payments to individual claimants. Instead, the Fund reviews each individual claimant's application and documentation when determining eligibility and payment amounts. The limitations of the Fund's summary data on the date of the claimants' final judgments are discussed further in the data limitations section of this notice.

_Request To Use the Fund's Payment Percentage in the First and Second Round_

GAO received comments about the use of the Fund's payment percentage for our estimation lump sum catch-up payment.[13] For example, commentators suggested that GAO add the payment percentages calculated by the Fund in the first and second rounds to determine the percentage needed for catch-up payments.

_GAO Response:_ The mandate calls for GAO to estimate potential lump sum catch-up payments in "amounts that, after receiving the lump sum catch-up payments, would result in the percentage of the claims of 9/11 victims, 9/11 spouses, and 9/11 dependents received from the Fund being equal to the percentage of the claims of 9/11 family members received from the fund, [as of the date of enactment]."[14] Thus,

---

[7] The Fund allocated $1.1 billion for initial-round payments and $1.095 billion for second-round payments. See U.S. Victims of State Sponsored Terrorism Fund, "Special Master Report Regarding the Third Distribution," at 2 (June 2020).

[8] See id.; U.S. Victims of State Sponsored Terrorism Fund, http://www.usvsst.com (last accessed June 1, 2021).

[9] A summary of these comments are captured below; however, some comments fell into multiple categories and are included in all applicable categories.

[10] GAO counted comments received multiple times with the same content and sender as one comment.

[11] According to the Fund's June 2020 congressional report, the applications of eligible claimants who applied in rounds one or two are carried forward into subsequent payment rounds. U.S. Victims of State Sponsored Terrorism Fund, "Special Master Report Regarding the Third Distribution," at 2 (June 2020).

[12] As discussed in footnote 5, in general the Fund determines the eligibility of a claim for payment in each round by determining that the claimant holds a final judgment issued by a United States district court under State or Federal Law against a foreign state that has been designated a state sponsor of terrorism and arising from acts of international terrorism and that that claim was submitted timely.

[13] The Fund's "payment percentage" is the amount of funds available to pay all eligible claimants in a given round divided by compensatory damages after accounting for the individual and family caps, compensation from other sources, and prior payments from the Fund. The payment percentage for the initial round of payments was 13.6561 percent (generally rounded to 13.66 percent in USVSST Fund communications). The payment percentage for the second round of payments is 4.1955 percent (rounded to 4.2 percent in USVSST Fund communications). The payment percentage total for both rounds is 17.8516 percent, rounded here to 17.85 percent. See U.S. Victims of State Sponsored Terrorism Fund, "Payment Calculation Explanation," at 4 (December 2018).

[14] 34 U.S.C. 20144(d)(4)(C)(ii). Further, section 1705 provides for GAO to conduct this audit in accordance with 34 U.S.C. 20144(d)(3)(A), which generally places limits on the amount of eligible claims (referred to as "statutory caps"). For example, for individuals, the cap is generally

Continued

**Enclosure III:**

GAO estimated the amount needed to provide potential lump sum catch-up payments so that these payments to 9/11 victims, spouses, and dependents would represent an equal percentage of their net eligible claims as the amounts received by 9/11 family members. GAO did not combine the Fund's payment percentages, which were based on payments to all eligible claimants in each round because the mandate calls for GAO to calculate a specific percentage for these catch-up payments that is based on payments to certain 9/11 claimants only.

**Methodology To Produce Estimates for Lump Sum Catch-Up Payments**

To estimate the amount(s) called for in the mandate, GAO used data obtained from the Fund on the following amounts: (1) Payments received by 9/11 family members in rounds one and two; (2) net eligible claims [15] of 9/11 family members who received payments in rounds one and two; and (3) net eligible claims of 9/11 victims, spouses, and dependents who have not received payments in rounds one or two. To calculate the first two amounts, GAO identified the population of claimants who were 9/11 family members and received payments in rounds one and two. GAO divided the payments received by 9/11 family members in rounds one and two by the net eligible claims of 9/11 family members who received payments in rounds one and two to calculate the percentage called for in the mandate. To calculate the third amount, GAO calculated the total net eligible claims of 9/11 victims, spouses and dependents who had not received payments in rounds one or two. GAO multiplied the percentage above by the total net eligible claims of 9/11 victims, spouses, and dependents who submitted eligible applications by the February 19, 2020 deadline for the third round distribution of the Fund.[16] This generated an estimate of the total amount needed to provide lump sum catch-up payments for 9/11 victims, spouses, and dependents.

GAO also calculated the amount needed to provide lump sum catch-up payments by group (i.e., 9/11 victims, spouses, and dependents) utilizing the percentage calculated above.[17] To estimate the average lump sum catch-up payments by individual for each group in our forthcoming report to Congress, GAO will multiply the net eligible claim of each claimant by the same percentage and then calculate the average catch-up payment for individuals within each group.

**Data Limitations**

In accordance with GAO standards, we assessed the reliability, accuracy, and completeness of the readily available electronic data DOJ provided from the Fund to ensure that it is appropriate for our purposes. Specifically, we reviewed relevant documentation from the Fund, including data on net eligible claims, judgment dates, and payment distributions across three payment rounds, conducted interviews with agency officials, and checked the data for outliers. Our review of the data found it to be sufficiently reliable for the purposes of estimating potential catch-up payments for eligible claimants.

However, with regard to summary data that the Fund provided on the dates of claimants' final judgments, GAO found limitations with the completeness of this data for the purposes of determining which claimants had final judgments prior to September 14, 2018. According to the DOJ officials that support the Fund, the summary data provided by the Fund on these judgments was compiled for internal purposes and not for the purposes of calculating individual payments to individual claimants. Instead, the Fund reviews each individual claimant's application and documentation when determining eligibility and payment amounts.

The summary data contained information on judgments for each claimant in the third distribution, but for some claimants who had multiple judgments, only the most recent judgment was included as it incorporated the amounts of any prior judgments. For example, a claimant may have received one judgment in 2016 for pain and suffering damages in the amount of $2 million and then received a second judgment after September 14, 2018, which added an additional $15 million in economic damages to the previous pain and suffering damages judgment, totaling $17 million. In that case, DOJ officials supporting the Fund told us that, for their purposes, they only needed to record the most recent judgment and the total amount (in the example above, $17 million), and thus use of this summary data to determine the population of those eligible for catch-up payments could have resulted in a potential underestimate of eligible claimants. It would not have been practicable for us to conduct a case-by-case review of individual judgments to determine which claimants had multiple judgments, with one prior to the September 14, 2018 date used in our prior notice and one after that date.

Given these limitations, and the arguments raised by commentators opposed to the September 14, 2018 date discussed above, GAO developed a more inclusive estimate that included eligible 9/11 victims, spouses, and dependents from all three payment rounds who did not receive a payment in the first two rounds of the Fund.

**Estimates for Lump Sum Catch-up Payments**

GAO calculated 3,288 9/11 family members received total payments of $1,155,264,392 in rounds one and two. The total net eligible claims of these 9/11 family members was $19,723,494,745. Using these amounts, we calculated the percentage called for in the mandate at 5.8573 percent. We then estimated the 5,364 9/11 victims, spouses, and dependents had total net eligible claims of $45,287,995,177 and multiplied the 5.8573 percentage to generate $2,652,653,742, the total amount needed to provide lump sum catch-up payments for 9/11 victims, spouses, and dependents, so that the percentage of net eligible claims received by 9/11 family members is equal to the percentage of net eligible claims received by the 9/11 victims, spouses, and dependents in the population (see Table 1).

---

$20,000,000 and for claim family members when aggregated, the cap is generally $35,000,000. As such, we used data from the Fund on the claim amounts after the application of statutory caps.

[15] For the purposes of our analysis, "net eligible claims" refers to the monetary amount of all eligible claims after the application of relevant statutory caps by the Fund, if applicable. See 34 U.S.C. 20144(d)(3)(A). For example, for individuals, the cap is generally $20,000,000 and for claims of 9/11 family members' net eligible claims, we used rounds one and two data, the rounds in which the family members' payments were received, from the Fund on the claim amounts after the application of statutory caps. To calculate the amount of 9/11 victims, spouse and dependents' net eligible claims, we used round three data from the Fund on the claim amounts after the application of statutory caps.

[16] The population for which we are estimating "catch-up payments" are 9/11 victims, spouses, and dependents who applied for payments in the first, second, or third round of payments from the Fund and who did not receive payments from the Fund in rounds one or two. See 34 U.S.C. 20144(c), (d)(4)(C); U.S. Victims of State Sponsored Terrorism Fund, "Special Master Report Regarding the Third Distribution," at 2 (June 2020). According to the Fund's June 2020 congressional report, the applications of eligible claimants who applied in rounds one or two are carried forward into subsequent payment rounds. GAO used the amount of net eligible claims calculated in the third round for 9/11 victims, spouses, and dependents.

[17] As noted above, while the Terrorism Act, as amended, contains a provision for us to estimate catch-up payments, it does not currently authorize such catch-up payments to be made.

**Enclosure III:**

Federal Register / Vol. 86, No. 111 / Friday, June 11, 2021 / Notices        31315

TABLE 1—ESTIMATED AMOUNT NEEDED TO PROVIDE LUMP SUM CATCH-UP PAYMENTS BY GROUP TO ELIGIBLE 9/11 VICTIMS, SPOUSES, AND DEPENDENTS

| Group | Total amount needed to provide lump sum catch-up payments |
|---|---|
| 9/11 Victims .................. | $811,945,396 |
| 9/11 Spouses ................. | 859,813,713 |
| 9/11 Dependents ............ | 980,894,632 |
| Total ................. | 2,652,653,742 |

**Authority:** Pub. L. 116–260, div. FF, tit. XVII, 1705, 134 Stat. 1182, 3293–3294 (34 U.S.C. 20144(d)(4)(C)).

**Charles Michael Johnson, Jr.,**
*Managing Director, Homeland Security and Justice, U.S. Government Accountability Office.*

[FR Doc. 2021–12109 Filed 6–10–21; 8:45 am]

BILLING CODE 1610–02–P

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Food and Drug Administration

[Docket No. FDA–2021–N–0008]

### Gastroenterology and Urology Devices Panel of the Medical Devices Advisory Committee; Notice of Meeting

**AGENCY:** Food and Drug Administration, HHS.

**ACTION:** Notice.

**SUMMARY:** The Food and Drug Administration (FDA) announces a forthcoming public advisory committee meeting of the Gastroenterology and Urology Devices Panel of the Medical Devices Advisory Committee. The general function of the committee is to provide advice and recommendations to the Agency on FDA's regulatory issues. The meeting will be open to the public.

**DATES:** The meeting will take place virtually on July 14, 2021, from 9 a.m. Eastern Time to 6 p.m. Eastern Time.

**ADDRESSES:** Please note that due to the impact of this COVID–19 pandemic, all meeting participants will be joining this advisory committee meeting via an online teleconferencing platform. Answers to commonly asked questions including information regarding special accommodations due to a disability may be accessed at: *https://www.fda.gov/advisory-committees/about-advisory-committees/common-questions-and-answers-about-fda-advisory-committee-meetings.*

**FOR FURTHER INFORMATION CONTACT:** James Swink, Center for Devices and Radiological Health, Food and Drug Administration, 10903 New Hampshire Ave., Bldg. 66, Rm. 5211, Silver Spring, MD 20993–0002, *James.Swink@fda.hhs.gov,* 301–796–6313, or FDA Advisory Committee Information Line, 1–800–741–8138 (301–443–0572 in the Washington, DC area). A notice in the **Federal Register** about last minute modifications that impact a previously announced advisory committee meeting cannot always be published quickly enough to provide timely notice. Therefore, you should always check the Agency's website at *https://www.fda.gov/AdvisoryCommittees/default.htm* and scroll down to the appropriate advisory committee meeting link, or call the advisory committee information line to learn about possible modifications before the meeting.

**SUPPLEMENTARY INFORMATION:**
*Agenda:* The meeting presentations will be heard, viewed, captioned, and recorded through an online teleconferencing platform. On July 14, 2021, the committee will discuss, make recommendations, and vote on information regarding the premarket approval application (PMA) for the Organ Care System (OCS) Liver System, by TransMedics, Inc. The proposed Indication for Use for the OCS Liver System, as stated in the PMA, is as follows:

The TransMedics® Organ Care System (OCS™) Liver is a portable extracorporeal liver perfusion and monitoring system indicated for the resuscitation, preservation, and assessment of liver allografts from donors after brain death (DBD) or liver allografts from donors after circulatory death (DCD) ≤55 years old in a near-physiologic, normothermic and functioning state intended for a potential transplant recipient.

FDA intends to make background material available to the public no later than 2 business days before the meeting. If FDA is unable to post the background material on its website prior to the meeting, the background material will be made publicly available on FDA's website at the time of the advisory committee meeting. Background material and the link to the online teleconference meeting room will be available at *https://www.fda.gov/advisory-committees/medical-devices-advisory-committee/gastroenterology-urology-devices-panel.* Select the link for the 2021 Meeting Materials.

The meeting will include slide presentations with audio components to allow the presentation of materials in a manner that most closely resembles an in-person advisory committee meeting.

*Procedure:* Interested persons may present data, information, or views, orally or in writing, on issues pending before the committee. Written submissions may be made to the contact person on or before July 7, 2021. Oral presentations from the public will be scheduled on July 14, 2021 between approximately 2 p.m. Eastern Time and 3 p.m. Eastern Time. Those individuals interested in making formal oral presentations should notify the contact person (see **FOR FURTHER INFORMATION CONTACT**). The notification should include a brief statement of the general nature of the evidence or arguments they wish to present, the names and addresses of proposed participants, and an indication of the approximate time requested to make their presentation on or before June 29, 2021. Time allotted for each presentation may be limited. If the number of registrants requesting to speak is greater than can be reasonably accommodated during the scheduled open public hearing session, FDA may conduct a lottery to determine the speakers for the scheduled open public hearing session. The contact person will notify interested persons regarding their request to speak by June 30, 2021.

For press inquiries, please contact the Office of Media Affairs at *fdaoma@fda.hhs.gov* or 301–796–4540.

FDA welcomes the attendance of the public at its advisory committee meetings and will make every effort to accommodate persons with disabilities. If you require accommodations due to a disability, please contact Artair Mallet at *Artair.Mallett@fda.hhs.gov* or 301–796–9638 at least 7 days in advance of the meeting.

FDA is committed to the orderly conduct of its advisory committee meetings. Please visit our website at *https://www.fda.gov/advisory-committees/about-advisory-committees/public-conduct-during-fda-advisory-committee-meetings* for procedures on public conduct during advisory committee meetings.

Notice of this meeting is given under the Federal Advisory Committee Act (5 U.S.C. app. 2).

Dated: June 4, 2021.

**Lauren K. Roth,**
*Acting Principal Associate Commissioner for Policy.*

[FR Doc. 2021–12266 Filed 6–10–21; 8:45 am]

BILLING CODE 4164–01–P

(105306)

This is a work of the U.S. government and is not subject to copyright protection in the United States. The published product may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.

| GAO's Mission | The Government Accountability Office, the audit, evaluation, and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability. |
|---|---|
| Obtaining Copies of GAO Reports and Testimony | The fastest and easiest way to obtain copies of GAO documents at no cost is through our website. Each weekday afternoon, GAO posts on its website newly released reports, testimony, and correspondence. You can also subscribe to GAO's email updates to receive notification of newly posted products. |
| Order by Phone | The price of each GAO publication reflects GAO's actual cost of production and distribution and depends on the number of pages in the publication and whether the publication is printed in color or black and white. Pricing and ordering information is posted on GAO's website, https://www.gao.gov/ordering.htm. <br><br> Place orders by calling (202) 512-6000, toll free (866) 801-7077, or TDD (202) 512-2537. <br><br> Orders may be paid for using American Express, Discover Card, MasterCard, Visa, check, or money order. Call for additional information. |
| Connect with GAO | Connect with GAO on Facebook, Flickr, Twitter, and YouTube. <br> Subscribe to our RSS Feeds or Email Updates. Listen to our Podcasts. <br> Visit GAO on the web at https://www.gao.gov. |
| To Report Fraud, Waste, and Abuse in Federal Programs | Contact FraudNet: <br><br> Website: https://www.gao.gov/about/what-gao-does/fraudnet <br><br> Automated answering system: (800) 424-5454 or (202) 512-7700 |
| Congressional Relations | Orice Williams Brown, Managing Director, WilliamsO@gao.gov, (202) 512-4400, U.S. Government Accountability Office, 441 G Street NW, Room 7125, Washington, DC 20548 |
| Public Affairs | Chuck Young, Managing Director, youngc1@gao.gov, (202) 512-4800 U.S. Government Accountability Office, 441 G Street NW, Room 7149 Washington, DC 20548 |
| Strategic Planning and External Liaison | Stephen J. Sanford, Managing Director, spel@gao.gov, (202) 512-4707 U.S. Government Accountability Office, 441 G Street NW, Room 7814, Washington, DC 20548 |



Please Print on Recycled Paper.